[Cite as *Amaro v. DeMichael*, 2024-Ohio-3290.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| R. JAMES AMARO, P.C. D/B/A AMARO LAW FIRM | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2024 CA 00003 |
| PATRICK DEMICHAEL, ET AL | : | |
| | : | |
| | : | OPINION |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Case No. 23 CV0 569

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      August 28, 2024

APPEARANCES:

For Plaintiff-Appellant

NATHAN P. WOODWARD
The Mine Law Firm
200 Park Avenue, Suite 200
Orange, OH 44122

For Defendants-Appellees

DAVID T. BALL
205 South Prospect Street
Granville, OH 43023

*Gwin, P.J.*

{¶1} Appellant appeals the December 5, 2023 judgment entry of the Licking County Court of Common Pleas granting appellees' Motion to Dismiss Pursuant to Civil Rule 12(B)(6).

*Facts & Procedural History*

{¶2} On May 23, 2023, appellant R. James Amaro, P.C., d/b/a Amaro Law Firm, filed a complaint against appellees Patrick and Ronald DeMichael for defamation, invasion of privacy/false light, libel, and tortious interference with contracts and prospective economic advantage. Appellees filed a Civil Rule 12(B)(6) motion to dismiss the complaint.

{¶3} Appellant filed an amended complaint on July 11, 2023, and, after obtaining leave from the trial court, a second amended complaint on August 2, 2023. The following facts are adduced from the second amended complaint, and must be taken as true since the trial court dismissed the complaint on a Civil Rule 12(B)(6) motion.

{¶4} Appellant is a law firm located in Houston, Texas, specializing in personal injury. Appellant has amassed over 1,500 positive reviews to its office's Google My Business ("GMB") listing. Prior to appellees' reviews, appellant had a perfect 5-star rating on GMB. Due to this perfect 5-star rating, appellant's firm was ranked near the top of Google search results for personal injury law firms. Appellant kept track of leads that were generated from its placement in Google search results. GMB listings allow consumers to find a business through a dedicated profile on Google Search and Google Maps, and businesses with higher GMB ratings appear more prominently in Google Search and Google Map results from keywords relevant to their industry.

{¶5} Beginning in February 2022 and continuing through June of 2022, appellees engaged in an attack intended to maliciously defame, harass, and destroy appellant's reputation by flooding appellant's GMB page with fake reviews. In publishing the fake reviews, appellees fraudulently concealed and misrepresented their identities by using fake names to publish false narratives about negative experiences doing business with appellant. Pursuant to Google's Terms of Service, which appellees agreed to when creating each individual Google user account, contributions "must be based on real experiences and information * * * [a]nd deliberately fake content, copied or stolen photos, off-topic reviews, defamatory language, personal attacks, and unnecessary or incorrect content are all in violation of [Google's] policy." Further, "content should reflect [the user's] genuine experience at the location and should not be posted must to manipulate a place's ratings." Finally, the Terms of Service state, "[d]on't post fake content, don't post the same content multiple times, and don't post content for the same place from multiple accounts." The fake reviews posted by appellees are designed and intended to manipulate Google's rating system for appellant's business. The fake reviews falsely purport to have been authored by actual clients of appellant and include false statements that are specifically intended to destroy the public's trust in appellant to provide ethical and competent legal representation.

{¶6} Between February of 2022 and June of 2022, approximately 100 fake reviews were left on appellant's GMB page, each by a separate Google user account bearing the name of an individual who has never been a client or potential client of appellant. Appellant listed each of the fake reviews posted by appellees in its complaint. The numbers next to the reviews correspond to the paragraph numbers contained in the

complaint. The fake reviews to appellant's GMB page are detailed in the complaint, as follows:

(32) Three-star fake review under the fictitious name "Lukas Gotz" (account formerly under the name Rochelle Henry) wherein the author falsely stated they were "not given clear direction regarding the matter and never got any updates with my case."

(33) Three-star fake review under the fictitious name "Kelley Phillips" falsely stating, "The communication was really poor. They did not provide follow ups which is something that should be improved."

(34) Three-star fake review under the fictitious name "Sandy Kaufmann" (account formerly named "Joe Gilbert") falsely stating, "People are professional and knowledgeable. My only concern is that they never called me back regarding my case. This is where they lack!"

(35) Three-star fake review under the fictitious name "Bessie Bradley," falsely stating, "I never expected such service. Thought they were good but they never responded to me I needed them."

(36) Three-star fake review under the fictitious name "Sara Fuller," falsely stating, "the communication was not good but got a nice result."

(37) Three-star fake review under the fictitious name "Janet Phillips," falsely stating, "was satisfied with the case outcomes but never got proper follow-ups from them!"

(38) Three-star fake review under the fictitious name "Joann Nichols, falsely stating "I don't know what's wrong with them.  The communication is very poor at this firm."

(39) Three-star fake review under the fictitious name "Kenneth Lawrence," falsely stating, "very poor communication."

(40) Three-star fake review under the fictitious name "Ueli Widmer," falsely stating, "My experience was just fine, but I never got any updates."

(41) Three-star fake review under the fictitious name "Jennie Ruiz."

(42) Three-star fake review under the fictitious name "Juan Silva."

(44) Three-star fake review under the fictitious name "Ethel McCoy," falsely stating, "not at all concerned about communicating to me about the case."

(45) Three-star fake review under the fictitious name "Wendy Harris," falsely stating, "did not get prompt responses."

(46) Three-star fake review under the fictitious name "Angelica Ramirez," falsely stating, "the communication is so poor that I don't know what is going on with my case."

(47) Three-star fake review under the fictitious name "Sylvie Marcotte," falsely stating, "communication is poor."

(48) Three-star fake review under the fictitious name "Lewis Cooper," falsely stating, "took days to give me follow up about my case."

(49) Three-star fake review under the fictitious name "Randy Pierce," falsely stating, "never called me back."

(50) Three-star fake review under the fictitious name "Geneva Moore," falsely stating, "communication was poor.  No follow-up was done, which needs to be addressed."

(51) Three-star fake review under the fictitious name "Douglas Ray," falsely stating, "I attempted to contact them for follow-up information, but they were unable to help."

(52) Three-star fake review under the fictitious name "Georgia Wright," falsely stating, "communication was not up to the mark."

(53) Three-star fake review under the fictitious name "Rosalie West," falsely stating, "did not answer when I needed them."

(54) Three-star fake review under the fictitious name "Allen Brewer," falsely stating, "I have to call them to get the updates for my case."

(55)  Three-star fake review under the fictitious name "Colleen Griffin," falsely stating, "did not get any updates about my case."

(56) Three-star fake review under the fictitious name "Alexis Gordon," falsely stating, "not easily available on call."

(57) Three-star fake review under the fictitious name "Deanna Vasquez," falsely stating, "Poor communication hampered the process.  They failed to follow up, which is something that should be addressed."

(58) Three-star fake review under the fictitious name "Sara Barrett," falsely stating, "One thing they lack was the communication.  It was very poor."

(59) Three-star fake review under the fictitious name "Karen Long," falsely stating, "I never got a satisfactory answer when I called them."

(60) Three-star fake review under the fictitious name "Cynthia Flores," falsely stating, "My only concern is that I never heard back from them regarding my case. This is where they fall short!"

(61) Three-star fake review under the fictitious name "Jeanette Ward," falsely stating, "Poor communication hampered the process. Follow-ups were not provided, which is something that needs to be addressed."

(62) Three-star fake review under the fictitious name "Steven Jones," falsely stating, "I need to call them to get the latest information about my case. I never heard from them!"

(63) Three-star fake review under the fictitious name "Belinda King," falsely stating, "There was poor communication on my part."

(64) Three-star fake review under the fictitious name "Helen Foster," falsely stating, "communication was not good."

(65) Three-star fake review under the fictitious name "Marion Harvey," falsely stating, "they never responded when I needed them."

(66) Three-star fake review under the fictitious name "Mozell W. Carmichael," falsely stating, "they didn't call me back again. I had to take initiative."

(67) Three-star fake review under the fictitious name "Lynda Miller," falsely stating, "To date, I have not received any follow ups from them despite my attempts to contact them."

(68) Three-star fake review under the fictitious name "Valerie Baker," falsely stating, "I have never received a proper response from the law firm.  Why is that?"

(69) Three-star fake review under the fictitious name "George E. Harper," falsely stating, "I was happy with the results of the case, but they never followed up."

(70) Three-star fake review under the fictitious name "Johanna Williamson," falsely stating, "it was very difficult to communicate."

(71) Three-star fake review under the fictitious name "Lindsey Hernandez," falsely stating, "communication was poor."

(72) Three-star fake review under the fictitious name "Janis Evans," falsely stating, "I never received a satisfactory answer when I called them."

(73) Three-star fake review under the fictitious name "Leo Cooper," falsely stating, "Poor communication hindered the process.  A follow-up was not provided, something that needs to be addressed."

(74) Three-star fake review under the fictitious name "Michelle Harper," falsely stating, "they weren't available when I needed them."

(76) Three-star fake review under the fictitious name "Tapati Kasagara," falsely stating, "I haven't heard back from them despite my attempts to contact them."

(77) Three-star fake review under the fictitious name "Wendy Warren," falsely stating, "they never followed up."

(78) Three-star fake review under the fictitious name "David R. Coleman," falsely stating, "I received a call from them, but they did not follow up. It is my responsibility to follow up."

(79) Three-star fake review under the fictitious name "Alexander Balfour," falsely stating, "The law firm has never responded to me properly. Why is this?"

(80) Three-star fake review under the fictitious name "Nalini Boudnauth" (account formerly named Kimberly Freund), falsely stating, "Although I have attempted to contact them, I have not received any follow up."

(81) Three-star fake review under the fictitious name "Walter J. Cormier," falsely stating, "I was pleased with the results of the case, but they did not follow up."

(82) Three-star fake review under the fictitious name "Rosalinda Vallo," falsely stating, "no follow-up was done."

(83) Three-star fake review under the fictitious name "James," falsely stating, "There are knowledgeable legal professionals here."

(84) Three-star fake review under the fictitious name "Bruce Maheu" (account formerly named Kathleen R. Newell) falsely stating, "the communication was not good."

(85) Three-star fake review under the fictitious name "Tyrone McElyea," falsely stating, "they are difficult to reach when you need them."

(86) Three-star fake review under the fictitious name "Kerry Sayler," falsely stating, "They are sensitive to your needs. Their knowledge and efficiency are impressive."

(87) Three-star fake review under the fictitious name "Brian Smith," falsely stating, "My case does not seem to have received a clear answer from the firm. There were no updates on my case!"

(88) Three-star fake review under the fictitious name "Gregory Erickson," falsely stating, "I am not able to get them to follow up despite my efforts."

(89) Three-star fake review under the fictitious name "Virginia Schuster," falsely stating, "Their communication was not to my taste. My case was resolved, but I did not receive any follow-ups."

(90) Three-star fake review under the fictitious name "Misha Rothman," falsely stating, "I was dealing with a personal injury case and didn't know what to do."

(91) Three-star fake review under the fictitious name "Max Newman," falsely stating, "They are the best attorneys in the region. Their professionalism and expertise surprised me greatly. They're incredibly lovely people that went out of their way to assist me."

(92) Three-star fake review under the fictitious name "Alan Page," falsely stating, "No answers to my questions were provided, but I appreciate their efforts."

(93) Three-star fake review under the fictitious name "Brent Thompson" (account formerly named Joe Lewis) falsely stating, "One thing I didn't like was the lack of communication."

(94) Three-star fake review under the fictitious name "Deanna Holmes," falsely stating, "They completed the task for me, but they did not contact me again, so I had to take action."

(95) Three-star fake review under the fictitious name "Mercedes Payne," falsely stating, "I was hit by a drunk driver and didn't know where to turn. I found them online and they helped me get the best medical care and win my case. I couldn't have done it without them."

(96) Three-star fake review under the fictitious name "A Google User" (account formally Judith Johnson) falsely stating, "I was in a serious car accident and these guys helped me get the money I deserved. I would recommend them to anyone."

(97) Three-star fake review under the fictitious name "Wendy Bates," falsely stating, "communication was poor."

(98) Three-star fake review under the fictitious name "Aaron Kyser, "falsely stating, "I've never received a satisfactory response from the law firm. I'm not sure why!"

(99) Three-star fake review under the fictitious name "Isabel Acosta," falsely stating, "They provide quality legal services and have the experience to handle any legal case. I would highly recommend them to anyone in need of legal assistance."

(101) Three-star fake view under the fictitious name "Tracey Armstrong," falsely stating, "I never received a satisfactory response to my questions."

(102) Three-star fake review under the fictitious name "Walz Blevins."

(103) Three-star fake review under the fictitious name "Senapus Leroy," falsely stating, "It was not what I had anticipated.  They were capable, but they did not respond when I needed them."

(104) Three-star fake review under the fictitious name "Sadie Williams."

(105) Three-star fake review under the fictitious name, "Ashlee Stewart," falsely stating, "The law firm's communication was abysmal.  I'm not that pleased!"

(106) Three-star fake review under the fictitious name, "Tia Ohman."

(107) Three-star fake review under the fictitious name, "Edward R. Bailey," falsely stating, "They didn't refer to us as family; instead, they just instructed us to accept a little compensation.  The level of communication was inadequate.  To find out what was going on, we had to contact.  We were told we'd be calling several times."

(108) Three-star fake review under the fictitious name "Theun," falsely stating, "The entire team has no idea what is going on.  They didn't even give me a call to let me know what was going on."

(109) Three-star fake review under the fictitious name "Margaret Holland," falsely stating, "I tried contacting them for further details, but they were unable to assist me.  They never called me back."

(110) Three-star fake review under the fictitious name "Ivan L. Crane," falsely stating, "I attempted to call them for follow-up information, but they were unable to assist me."

(111) Three-star fake review under the fictitious name "Flora Sanchez," falsely stating, "I need to call them to acquire the latest information on my case. They phoned me back!"

(112) Three-star fake review under the fictitious name "Man E. Ortiz," falsely stating, "they are not readily available when needed."

(113) Three-star fake review under the fictitious name "Bonnie McDonald," falsely stating, "My experience was satisfactory because I received no updates."

(114) Three-star fake review under the fictitious name "Daisy Roberts," falsely stating, "I did not receive timely response."

(115) Three-star fake review under the fictitious name "Alice Pierce," falsely stating, "Regardless of my attempts, I have yet to receive a response from them."

(116) Three-star fake review under the fictitious name "Lois Morgan," falsely stating, "I had no follow-up."

(117) Three-star fake review under the fictitious name "Ginsburg Zimrman," falsely stating, "communication is lacking."

(118) Three-star fake review under the fictitious name "Erin W. Henry," falsely stating, "I was never contacted again."

(119)   Three-star fake review under the fictitious name "Clara Martin," falsely stating, "Despite the fact that they did not respond to any of my questions, I appreciate their efforts."

(120) Three-star fake review under the fictitious name "Tracy Cunningham," falsely stating, "Poor communication."

(121) Three-star fake review under the fictitious name "John Fraher," falsely stating, "communication was lacking."

(122) Three-star fake review under the fictitious name "Marlene Gomez."

(123) Three-star fake review under the fictitious name "Abdool Hussain."

(124) Three-star fake review under the fictitious name "Alyssa Holmes."

(125) Three-star fake review under the fictitious name "Loma R. Harris," falsely stating, "I have no idea what is going on with my case because communication was so bad."

(126) Three-star fake review under the fictitious name "Lynda James," falsely stating, "Thank you for your assistance in relation to my accident. When I called them, I never received a satisfactory response."

(128) Three-star fake review under the fictitious name "Gloria Cruz."

(129) Three-star fake review under the fictitious name "Lena Aubuchon," falsely stating, "The communication was lacking.  There was no follow-up, which needs to be resolved."

(130) Three-star fake review under the fictitious name "Lynn Lane," falsely stating, "I simply haven't received any updates on my case."

(131) Three-star fake review under the fictitious name "Alvin Miller," falsely stating, "They were good at first, but I didn't get so much help later."

(132) Three-star fake review under the fictitious name "Roy King," falsely stating, "I was happy with the case's outcome, but they have never followed up with me!"

(133) Three-star fake review under the fictitious name "Floria J. Prieto."

(134) Three-star fake review under the fictitious name "Ellen M. Kier," falsely stating, "Thank you very much for coming.  Your services are of the highest caliber.  Please make an effort to improve your communication skills."

**{¶7}** The complaint avers appellant consulted its records and confirmed that none of the names associated with the Google accounts identified in the complaint are actual or potential clients of the firm.  Appellant also avers in the complaint that:  the reviews are false because the individuals who created them were never clients or potential clients of appellant's firm; the fake reviews are manufactured to create the false impression that there is widespread customer dissatisfaction with the services appellant provides to its clients; the fake reviews lower appellant's otherwise stellar reputation and injure appellant in its profession and trade; the fake reviews were published close in time to one another and were written in similar styles; many of the user accounts were created close in time to one another; the fake reviews and their cumulative effect on appellant's GMB star rating have been viewed and read by numerous individuals who have visited appellant's GMB page, including clients and potential clients; and appellant sustained damage as a result of the fake reviews, including a noticeable decrease in inquiries and client sign ups since the fake reviews began being published.

{¶8} User data produced by Google in response to a subpoena issued by appellant indicated that an IP address used to post the negative reviews at issue was assigned exclusively to the residence of appellees.

{¶9} Appellees filed a motion to dismiss the second amended complaint pursuant to Civil Rule 12(B)(6) on August 7, 2023. Appellees argued the following: the defamation claims must be dismissed because they fail to allege publication to an identifiable third party; the defamation claims must be dismissed because the allegedly defamatory statements were constitutionally protected statements of opinion; and the defamation per quod claims must be dismissed because the complaint fails to allege special damages. Finally, appellees contend the claims for invasion of privacy, trade libel, and tortious interference with business relations must be dismissed because they are derivative of appellant's defamation claims.

{¶10} Appellant filed a memorandum in opposition to appellees' motion to dismiss on August 21, 2023. Appellees filed a reply brief on August 28, 2023.

{¶11} The trial court issued a judgment entry granting appellees' motion to dismiss on December 5, 2023. The trial court found appellees' argument that a defamation plaintiff must allege publication of the statement to an identifiable third-party to be not well-taken, as the Ohio Supreme Court's binding defamation standard does not require a plaintiff to allege publication to an identifiable third party. The trial court then reviewed whether the statements are constitutionally protected expressions of opinion, and found as follows: a reasonable reader would not believe the statements have factual content; a reasonable reader would believe these statements contain language that conveys an opinion; a reasonable reader would not believe the statements in the reviews to have

specific factual content and would instead believe the statements in the reviews to be opinions; the general context of the statements are opinion, appear on a GMB page which convey a message to the reader that they will be exposed to the personal opinions of the public; the statements contain comments about communication and experience, which are perceptions based upon appellees' opinion; the general tenor of the GMB page is the public's opinion regarding appellant's business; and the GMB page contains many reviews of the public's opinions on their thoughts of appellant's business. Based upon these factors and the totality of the circumstances, the trial court found the ordinary reader would accept the statements as opinion and not as fact and thus, the trial court determined the statements are protected opinion under the First Amendment.

{¶12} Finally, the trial court found that since the remainder of the counts (false light invasion of privacy, trade libel, and tortious interference) are entirely derivative of appellant's defamation claims and the statements at issue are constitutionally protected statements of opinion, those claims must also be dismissed.

{¶13} Appellant appeals the December 5, 2023 judgment entry of the Licking County Court of Common Pleas, and assigns the following as error:

{¶14} "THE TRIAL COURT ERRED BY GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO OHIO RULE OF CIVIL PROCEDURE 12(B)(6)."

*Standard of Review*

{¶15} The trial court granted appellees' Civil Rule 12(B)(6) motion to dismiss. Our standard of review on a Civil Rule 12(B)(6) motion to dismiss is de novo. *Dover Chem. Corp. v. Dover*, 2022-Ohio-2307. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State*

*ex rel. Hanson v. Guernsey County Bd. of Commissioners*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle a plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

I.

{¶16} The trial court granted appellees' motion to dismiss the defamation claims against them, and further dismissed the remainder of the claims against appellees because they were derivative of the defamation claims.

{¶17} To establish defamation, the plaintiff must show: (1) a false statement of fact was made; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication; and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193.

{¶18} The expression of opinion is generally immune from liability under the Ohio and U.S. Constitutions. *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995).

{¶19} Whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court. *Scott v. News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986); *Frigo v. UAW Local 549*, 2005-Ohio-3981 (5th Dist.). To answer this question, a court must determine whether a reasonable reader or hearer will perceive the statement

as a fact or opinion. *State ex rel. Paluf v. Feneli*, 69 Ohio St.3d 138, 630 N.E.2d 708 (1994).

{¶20} In resolving whether an allegedly defamatory statement is protected opinion, a court must consider the totality of the circumstances. *Id.* Consideration of the totality of the circumstances involves at least four factors: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared. *Scott v. News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986). The analysis of these factors is not a bright-line test, and the weight to be given to any one factor under this inquiry will vary depending upon the circumstances of each case. *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995).

{¶21} In this case, there are 99 total fake reviews. In order to review the factors, we find it necessary to break these reviews into several categories. The reviews contained in paragraphs 41, 42, 102, 104, 106, 122, 123, 124, 128, and 133 are reviews that contain only three-stars with no language or text included (collectively the "Star-Only Reviews"). The reviews contained in paragraphs 83, 86, 91, 95, 96, 99, and 111 contain only positive statements about appellant, which generally state that appellant "helped them out" and were "knowledgeable legal professionals" (collectively the "Wholly Positive Reviews"). The reviews contained in paragraphs 36, 38, 39, 47, 52, 58, 59, 63, 64, 70, 71, 84, 85, 97, 105, 110, 114, 117, 120, and 121 are reviews primarily describing poor or difficult communication with appellant, utilizing language such as "poor communication," "communication not good," "no good answer," "difficult to communicate," "no timely response" (collectively the "Poor Communication Reviews"). The reviews in paragraphs

90, 125, 126, 131, and 134 utilize subjective language such as "poor communication," but they also specifically contain language indicating the reviewer is an actual or potential client of appellant, such as "dealing with personal injury case," "no idea what is going on with case," "called about accident," and "services high caliber, but need to improve communication" (collectively the "Client Language Reviews"). Finally, the reviews contained in paragraphs 32, 33, 34, 35, 37, 40, 44, 45, 46, 48, 49, 50, 51, 53, 54, 55, 56, 57, 60, 61, 62, 65, 66, 67, 68, 69, 72, 73, 74, 76, 77, 78, 79, 80, 81, 82, 87, 88, 89, 92, 93, 94, 98, 101, 103, 107, 108, 109, 112, 113, 115, 116, 118, 119, 129, 130, and 132, are reviews which contain language such as "no follow-up," "never called me back," "never updated me," "never responded," "no communication," "did not answer call" (collectively the "No Communication Reviews"). Some, but not all, of the No Communication Reviews contain specific language regarding the reviewer's "case," "experience," "outcome," "the task," and "the process."

*Specific Language Used*

{¶22} To determine whether a reasonable reader or hearer will perceive the statement as fact or opinion, courts must first look at the specific language used, focusing on how a reasonable reader would understand the statements. *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279 (1995). We must examine the common usage or meaning of the allegedly defamatory words themselves and determine whether the statement has a precise meaning, and thus is likely to give rise to clear factual implications. *Wampler v. Higgins,* 2001-Ohio-1293. A reader is less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood

meaning. *Id.* In general, more specific language weighs in favor of actionability. *Hartman v. Kerch*, 2023-Ohio-1972 (8th Dist).

**{¶23}** In this case, the Star-Only Reviews contain no specific language. In both the Wholly Positive Reviews and the Poor Communication Reviews, the statements do not have any readily ascertainable meaning and are ambiguous, because what constitutes "poor communication" and a "knowledgeable legal professional" can have various interpretations and can vary from reader to reader. Accordingly, for these three categories of reviews, the nature of the specific language weighs in favor of a determination that they express non-actionable opinion.

**{¶24}** However, both the Client Language Reviews and the No Communication Reviews contain specific and unambiguous statements. Whether a law firm called or did not call someone, followed-up or did not follow up with someone, and whether a reviewer had a case with appellant each have a commonly understood meaning. The language in these reviews is not so hyperbolic so as to undermine the reader's impression that the reviews allege appellant did not return calls, follow up, or were a client of appellant. Accordingly, for these two categories of reviews, the nature of the specific language weighs in favor of actionability.

*Whether the Statements are Verifiable*

**{¶25}** Courts next look to whether the statements are verifiable, and determine whether the statements are objectively capable of proof or disproof. *Wampler v. Higgins*, 2001-Ohio-1293. If the statement implies the defendant has first-hand knowledge that substantiates the opinions, it is more likely a statement of fact. *Hartman v. Kerch*, 2023-

Ohio-1972 (8th Dist). A statement that is capable or proof is disproof weighs in favor of actionability. *Id.*

{¶26} As to the Star-Only Reviews, the Wholly Positive Reviews, and the Poor Communication reviews, we find their lack of verifiability weighs against actionability. Whether a legal professional is "knowledgeable" or whether communication was "poor" reflect subjective impressions that are not capable of being verified. What constitutes "poor" communication and what constitutes whether someone is "knowledgeable," varies from person to person.

{¶27} On the other hand, we find the Client Language Reviews and the No Communication Reviews contain statements that are capable of proof or disproof; thus, this factor as to those reviews weighs in favor of actionability. With regard to the No Communication Reviews, it can be proved true or false as to whether appellant returned an alleged phone call, whether they did or did not provide an update, whether they did or did not follow-up with a particular person, whether an alleged call was answered, or whether they communicated with the reviewer at all.

{¶28} Further, in some of the No Communication Reviews, there are additional statements indicating the reviewer is an actual or potential client of appellant. These are statements that can be verified, such as whether the reviewer did or did not have a case with appellant, whether the reviewer did or did not have an "experience" with appellant, whether the reviewer did or did not request appellant complete a "task," whether the reviewer did or did not have an "outcome," and whether the reviewer did not or did not have any sort of "process" with appellant. The Client Language Reviews utilize subjective language such as "poor communication," but they also contain language specifically

indicating the reviewer is an actual or potential client of appellant such as the words "case," "accident," or "services." In these select No Communication Reviews and in all of the Client Language Reviews, the statements describe fictitious interactions or experiences between appellant and potential or actual clients. They are readily capable of being proven true or false by determining whether the reviewer was an actual or potential client that attempted to communicate with appellant about legal services. See *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205 (S.D.N.Y) (series of negative comments about the plaintiff's business on Yelp from fictitious anonymous users detailing fictitious treatments are readily capable of being proved true or false). When a review contains specific statements capable of being proved true or false in explanation for a negative online review or rating, these statements can be grounds for a defamation claim. See *North Atlanta Golf Operations, LLC v. Ward*, 363 Ga.App. 259 (2022).

{¶29} Accordingly, this factor weighs in favor of actionability for the No Communication Reviews and the Client Language Reviews, but against actionability for the Star-Only Reviews, the Wholly Positive Reviews, and the Poor Communication Reviews.

*General Context of Statements*

{¶30} The third prong requires courts look to the context in which the statements at issue appear. *Wampler v. Higgins*, 2001-Ohio-1293. A court should "examine more than simply the alleged defamatory statements in isolation, because the language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer." *Id.*

{¶31} The general tenor of the reviews is that they are posted in an online forum, purporting to be a neutral representation of the reviewer's experience. There is a collection of fake reviews, ninety-nine in total, each containing a three-star review, and each purporting to have been submitted by a different reviewer. Other than the Star-Only Reviews, each review follows a similar pattern in terms of length and substance. All of these fake reviews were submitted in a relatively short period of time, between February and June of 2022. The collection of reviews as a whole suggest that each of the reviews was authored by someone who was a client or potential client of appellant. A reasonable reader would believe the reviewers had actual experiences with the firm, and the collection of negative reviews were premised on first-hand information. Accordingly, we find this factor weighs in favor of actionability for all of the reviews.

*Broad Context in which Statements Appear*

{¶32} Lastly, a Court must consider the broader context of the allegedly defamatory remarks because different types of writing have varying social conventions which "signal to the reader the likelihood of a statement being either fact or opinion." *Old Dominion Branch No. 496, Nat'l Assn. of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264 (1974).

{¶33} To evaluate a statement's broader context, we must examine where the statement is placed, and how that would influence the reader's viewpoint on the question of fact or opinion. *Scott v. News-Herald*, 25 Ohio St.3d 243 (1986).

{¶34} In this case, all of the reviews appear on the Internet, specifically on appellant's GMB page. The Internet generally promotes a more relaxed type of communication. While very generalized comments or reviews on the Internet that lack

specificity may signal to a reader there is no factual basis for the review, specifics may signal the opposite. See *Bentley Reserve L.P. v. Papaliolios*, 218 Cal.App. 4th 418 (2013).

{¶35} Appellees contend that all statements posted on a GMB or Google review page are protected opinion because it is an online review platform designed for reviewers to give their opinion. We disagree with this argument. To accept this assertion would negate the four-prong "totality of the circumstances" test, and would essentially make the "broad context" factor the sole determinative factor as to whether a statement was protected opinion. Rather, we find the "totality of the circumstances" test must still be utilized, no matter which forum the review is posted on or through, whether print or digital. Additionally, we must accept as true appellant's assertion in the complaint that, pursuant to Google policy, contributions and content "must be based on real experiences" and "should reflect the user's genuine experience at the location and should not be posted to manipulate a place's rating."

{¶36} We find the primary cases cited by appellees to be distinguishable from the instant case. In *Abboud v. Khairaliah*, 2021 WL 3163667 (2nd Dist. California), the court held that simply because a reasonable reader could infer the reviewer was a client is not enough to convert subjective judgments such as "rude," "unprofessional," and "had a bad experience" from protected opinion to actionable statements, and because there were no statements about the fake reviewer's alleged experience with the plaintiff's legal services that could be proven true or false, the review was not actionable. The Court found that a single negative review posted on a Google forum open to the public which expressed only generalized, subjective judgments and included hyperbole, was protected opinion. *Id.* In

this case, both the No Communication Reviews and the Client Language Reviews (totaling over sixty reviews) are not subjective statements or judgments, but are statements about the fake reviewers' experience with appellant's legal services that can be proven true or false. In fact, the *Abboud* court specifically holds that fake reviews can expose the speaker to defamation liability when they contain verifiably false statements about the business' practices, not solely the fake reviewer's subjective judgment about the business. *Id.* That is exactly what occurred in this case, i.e., the No Communication Reviews and Client Language Review fake reviews contain verifiably false statements about the law firm's practices, such as unreturned phone calls and no follow-ups. Finally, the Court in *Abboud* noted that one fake review "implies one single dissatisfied client, not that the plaintiff regularly fails to adequately represent clients' interests or engaged in any specific misconduct one would expect a lawyer not to commit." *Id.* In this case, the large number of fake reviews implies a large volume of dissatisfied clients and implies appellant regularly failed to adequately represent their clients' interests.

{¶37} In *Law Offices of David Freydin, P.C. v. Chambers,* 24 F.4th 1122 (7th Cir. 2022), the Court found comments posted on a law firm's social media site were not actionable. The primary reason why the comments were not actionable was because the comments did not relate to the legal services of the plaintiff. Rather, they dealt with and responded to negative comments the attorney-plaintiff had made about Ukraine. The Court found the comments were not actionable because none of the statements could be objectively verified as true or false; rather, they were "short reviews [that] did not purport to provide any factual foundation and were clearly meant to expression of the opinions of the defendants in response to plaintiff's insults to Ukraine." *Id.* While appellees cite the

portion of the case that states comments are not actionable merely because the reviewer did not have a direct consumer relationship with the plaintiff, the Court specifically also added the following line to that statement, "assuming the three [other] factors did not indicate otherwise." Here, with regard to the No Communication and Client Language Reviews, the three other factors do indicate otherwise (i.e., they specifically indicate the reviewer had a direct consumer relationship with the plaintiff and contain comments that directly relate to the alleged legal services of plaintiff that can be objectively verified as true or false).

{¶38} *Spencer v. Glove*r, 397 P.3d 780 (2017) is also distinguishable from the instant case because: (1) the negative online review was written by an actual client and (2) the statements were subjective and were not capable of objective verification ("worst ever," "had to fire him after I gave him a chance"). Finally, the *Quality Overhead Door, Inc. v. LaPoint Discount Auto Parts, Ltd.* case, 2021 Ohio Misc. LEXIS 864, is a common pleas court case that is not binding upon this Court. It is also factually distinguishable because the defendant in the case was an actual client of the plaintiff, the language in the review was subjective, and there was only one negative review posted on a Google site.

{¶39} We find that, due to the placement on the GMB page and the more general and subjective language used, this factor weighs against actionability as to the Star-Only Reviews, the Wholly Positive Reviews, and the Poor Communication Reviews. However, the very specific and objective language used in the No Communication Reviews and the Client Language Reviews, in combination with their placement on the GMB page, signals to the reader there is a factual basis for the reviews. These reviews are factually specific

and contain statements placed on a GMB review site that could reasonably be understood as conveying provable facts and meant to be used by prospective clients to evaluate appellant as a law firm. Accordingly, this factor weighs in favor of actionability as to those reviews.

*Conclusion*

{¶40} Considering the factors, we find, based upon the totality of the circumstances, the Star-Only Reviews, the Wholly Positive Reviews, and the Poor Communication Reviews are not actionable because they are protected opinion.

{¶41} Upon our de novo review, we find all four factors indicate the No Communication Reviews and the Client Language Reviews are not protected opinion. Because we must accept all of the allegations in appellant's complaint as true, we find, as to the No Communication Reviews and the Client Language Reviews, appellees have created and posted false reviews that contain statements describing a fictitious lack of follow-up, a fictitious lack of communication, or a fictitious client relationship, that are all readily capable of being proved true or false.

{¶42} Accordingly, based upon the totality of the circumstances, the statements at issue (No Communication Reviews and Client Language Reviews) are not protected opinion. See *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205 (S.D.N.Y); *RingCentral, Inc. v. Nextivia, Inc.*, 2021 WL 2476879 (N.D. California) (85 fake negative reviews accusing plaintiff of providing poor services was not protected opinion); *ZL Technologies v. DOES 1-7*, 13 Cal.App.5th 603 (2017) (1st Dist.) (each review listed positive points, but also included specific factual assertions capable of being proved true or false, so they are actionable); *Lowell v. Wright*, 369 Or. 806 (2022)

(negative google review not protected opinion when comments are factual matters with truth values); *Thibodeaux v. Starx Investment Holdings, Inc.*, 2021 WL 4927417 (Texas) (reviews posted on websites alleging "never received a phone call" are verifiable statements of fact, not protected opinion); *The Fireworks Restoration Co., LLC v. Hosto*, 371 S.W.3d 83 (E.D. Missouri) (fabricated customer reviews posted on Google are not protected opinion).

{¶43} We further note that while the Star-Only Reviews, Wholly Positive Reviews, and Poor Communication Reviews may not be separately actionable, they are relevant evidence to demonstrate appellees' pattern of conduct, to demonstrate the systematic way in which appellees posted or constructed the reviews, and to demonstrate the large volume of reviews allegedly attributable to appellees in a short time span.

{¶44} The trial court dismissed appellant's claims for invasion of privacy/false light, libel, and tortious interference based upon the fact these claims are entirely derivative of the defamation claims. Due to our determination that the trial court committed error in finding all of the statements at issue protected opinion, we find the trial court committed error in dismissing the balance of appellant's claims.

{¶45} Based upon the foregoing, appellant's assignment of error is sustained. The December 5, 2023 judgment entry of the Licking County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur