[Cite as *W.A. Smith Fin., L.L.C. v. Doe*, 2026-Ohio-184.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

W.A. SMITH FINANCIAL, LLC,
ET AL.,                                         :

      Plaintiffs-Appellants,        :

      v.                             :

JOHN DOE,                                       :

      Defendant-Appellee.           :

No. 114884

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 22, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-971572

*Appearances:*

Reminger Co., L.P.A., Joseph S. Simms, and Brianna M. Prislipsky, *for appellant*.

John T. MacDonald, Jr., *pro se.*

SEAN C. GALLAGHER, J.:

{¶ 1} W.A. Smith Financial, LLC ("W.A. Smith") and Great Lakes Retirement, Inc., appealed the judgment entered following a jury verdict in favor of John MacDonald, Jr., upon the plaintiffs' claims for defamation arising from a

short-lived online review posted by MacDonald through his personal account on Google.[1] For the following reasons, we affirm.

{¶ 2} At the onset, it must be recognized that although the appeal was filed on behalf of both plaintiffs, only W.A. Smith filed and was mentioned in the brief filed by the appellant. Unlike the notice of appeal, Great Lakes Retirement was not included as a named party on the brief, which was filed by counsel on behalf of an "appellant." Further, the only plaintiff mentioned throughout that brief was W.A. Smith. As a result, the appeal filed on behalf of Great Lakes Retirement is dismissed. *See* App.R. 18(C) ("If an appellant fails to file the appellant's brief within the time provided by this rule . . . the court may dismiss the appeal."). The only issues preserved for this panel's consideration are those raised in W.A. Smith's appellate brief pertaining to its claims, none of which appear to be shared by Great Lakes Retirement from the arguments presented.

{¶ 3} The facts of this case are relatively straightforward. W.A. Smith, a financial planning firm, alleged claims for defamation and disparagement for the following Google review posted online by MacDonald relating to its services:

> AVOID THIS COMPANY BY ALL MEANS. They sell less than investment grade products that provide higher than industry standards commissions to their investment advisors. In fact, they sell junk products to which some of the companies of the products were engaging in fraud and swindled clients out of their retirement money.

---

[1] The original complaint named the defendant as "John Doe," but MacDonald was substituted as the defendant in the amended complaint filed after his identity was discovered. The caption of the case nonetheless retained "John Doe" as the named defendant.

RUN RUN . . . far away from this company.  I am aware of clients losing thousands from this company.

W.A. Smith is an Ohio-based financial planning firm, assisting its clients in managing their money and reaching their retirement goals.  MacDonald is a resident of Texas, and his parents reside in Ohio.  MacDonald's parents purchased various investments and insurance products through W.A. Smith and its investment advisory affiliate, Great Lakes Retirement.  MacDonald posted the Google review after learning that his mother had some concerns about one of the purchases, but it was removed by Google.  One of the investments MacDonald's parents purchased involved a company that was the subject of a Department of Justice investigation. The impact of that investigation on the truth of the review was a point of contention at trial.

**{¶ 4}** During the pretrial proceedings, W.A. Smith filed a motion for summary judgment claiming that it was entitled to judgment as a matter of law because the statements were per se defamatory and was also entitled to a $1.2 million judgment based in part on the decreased business the online review caused. That motion was denied, and the claims were presented to a jury.  The trial court submitted the following interrogatory for the jury's consideration: "Do you find by a preponderance of the evidence that defendant MacDonald made a statement of fact about plaintiff?"  The jury answered "no," ostensibly concluding that review did not contain statements of fact.  The interrogatory instructed the jury that "[i]f the answer of six or more of jurors to [the above] is 'no,' skip the remaining Interrogatories,

complete the verdict form for the Defendant, and return to the Courtroom." The jury did just that, and the court entered a judgment in MacDonald's favor on all claims. Importantly, the trial court was not responsible for the wording of the interrogatory. W.A. Smith proposed that language in a filing four months before trial commenced and again agreed to that wording at trial.

{¶ 5} In the first assignment of error, W.A. Smith claims the trial court erred in denying motion for summary judgment because it was unopposed. According to it, "[w]hile Plaintiff's motion addressed – in close detail – each of the elements of its claims, the trial court nonetheless denied the motion in its entirety without opinion, despite Defendant raising no admissible evidence in opposition."

{¶ 6} W.A. Smith fails to address binding, relevant authority. It has long been held that under Civ.R. 56, "even where the nonmoving party fails completely to respond to the motion, summary judgment is improper unless reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party." *Morris v. Ohio Cas. Ins. Co.*, 35 Ohio St.3d 45, 47 (1988), citing *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.*, 24 Ohio St.3d 198 (1986); *see also Rosett v. Holmes*, 2023-Ohio-606, ¶ 13 (8th Dist.). Thus, it is not error to deny an unopposed motion for summary judgment. *See id.* Moreover, when the denial of a motion for summary judgment is based on disputed facts or inferences, the denial of summary judgment is generally deemed moot following a trial on the merits in which the disputed factual question is considered by the trier of fact. *Bliss v. Manville*, 2022-Ohio-4366, ¶ 14. The sole exception to

that general rule is if the motion for summary judgment presented a purely legal question dispositive of the case. *Id.*

{¶ 7} Although citing the *Bliss* line of authority, W.A. Smith does not identify any pure issue of law that would support granting their motion for summary judgment in its favor, which was entirely based on its view of the evidence and its opinion that MacDonald lacked any legal defenses to the claim and damages. Notwithstanding, it is suggested that the trial court erred in denying the motion for summary judgment when it failed to determine whether the statements were ones of fact or opinion. That argument rings hollow.

{¶ 8} W.A. Smith filed a motion for summary judgment seeking a judgment in its favor on all claims and the imposition of a $1.2 million judgment based on MacDonald posting a disfavorable Google review. The trial court was not asked to determine the legal question of whether any of the statements were an opinion in that motion, which would have entitled MacDonald to a judgment in his favor as a matter of law anyway. As the Ohio Supreme Court recently emphasized, "'[O]ur judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties.'" *Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4, quoting *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15, and *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Because that issue was not raised, there can be no error with the trial court's failure to render that decision in denying the motion for summary judgment.

{¶ 9} It is understandable why that was not a consideration for the trial court at the time. One would not expect a plaintiff to actively present an argument resulting in the dismissal of its own claims, which would occur if the trial court deemed the online review an opinion. *See Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 283 (1995) (statements of opinion are constitutionally protected and do not give rise to defamation). It was MacDonald's burden to raise the issue of whether the statements were an opinion, because that would have been a legal defense to the defamation claims. He did not do so, and therefore, the trial court was not permitted to advocate on his behalf. *Snyder* at ¶ 4. It cannot be said that there is any error in the denial of the motion for summary judgment when a question of fact existed as to the truth of the statements and as to the mitigation or measure of damages. *See Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 445 (1996) ("In Ohio, truth is a complete defense to a claim for defamation."); R.C. 2739.02 (In an action for a libel or a slander, "any mitigating circumstances may be proved to reduce damages."). Those questions were solely within the province of the jury to resolve.

{¶ 10} The dissent must briefly be acknowledged on this point. For the sake of clarity, and as discussed above, the question of whether the statements in the Google review are an opinion was a complete defense that *MacDonald* failed to present at the summary-judgment stages. MacDonald did not ask for a determination that the statement was an opinion, and accordingly, *Old World* precluded the trial court from declaring any of the statements to be an opinion on

MacDonald's behalf, which would have resulted in summary judgment in his favor. Upon denying the motion for summary judgment, W.A. Smith was permitted to claim that every challenged statement was one of fact at trial, which it did.

{¶ 11} The remainder of the dissent thoroughly reviews the facts and evidence presented to the jury on the question of liability but reaches a different conclusion based on an "independent assessment of Google review utilizing the totality-of-the-circumstances analysis," which is solely meant to determine whether a statement is an opinion rather than a fact, not to determine the merits of a defamation claim. As the dissent concludes, none of the statements were opinions, and thus, W.A. Smith was entitled to the trial on its defamation claim — a trial that occurred. Even if we agree with the dissent on this point, that conclusion does not entitle W.A. Smith to a partial judgment on liability and a do-over on damages. MacDonald presented disputed evidence at trial regarding the truth of the statements and the extent of the damages, which was resolved by the jury. It has long been held that denying a motion for summary judgment based on a factual question is harmless error or mooted when there are genuine issues of material fact presented to the jury. *Bliss*, 2022-Ohio-4366, at ¶ 14. Because the evidence presented at trial demonstrated that reasonable minds could reach differing conclusions as to each and every element of the defamation claim, any error in denying the unopposed motion for summary judgment is moot.

{¶ 12} In short, and returning to the arguments as presented, W.A. Smith cannot claim any prejudice caused by the failure of the trial court to determine

whether the Google review constituted an opinion, which is a complete defense to its defamation claims. *Vail* at 283. In a defamation case, if the statements are opinions, judgment should be entered in the defendant's favor as a matter of law. *See Vail* at 283 (statements of opinion are constitutionally protected and do not give rise to defamation). If the statements are arguably untrue facts, the case proceeds to trial, which occurred in this case. The trial court's failure to designate the statements as an opinion pretrial did not prejudice W.A. Smith. It, in fact, benefited W.A. Smith, which was able to present the defamation question to the jury based on all statements in the Google review. The first assignment of error is overruled.

{¶ 13} In the second assignment of error, W.A. Smith claims that the trial court erred in allowing "several newspaper articles" into evidence contrary to hearsay principles. It appears that MacDonald discussed the introduction of newspaper articles published after the posting of the online review at his discovery deposition that, in his view, proved his review to be true. Those newspaper articles do not appear in the trial record, and therefore, it is unclear which evidentiary trial submissions are being referenced in the second assignment of error.

{¶ 14} Although the trial court denied a motion in limine referencing "newspaper articles," tr. 15:10-11, that preliminary denial was expressly conditional, subject to a case-by-case reconsideration if the issue actually arose during trial. Tr. 17:12-16. The only other mention of any "newspaper articles" in the trial transcript appears in W.A. Smith's cross-examination of MacDonald, but no newspaper article was published to the jury and W.A. Smith can hardly object to its

own cross-examination. Tr. 499. And most important, none of the recorded defense exhibits offered at trial include any "newspaper articles."

{¶ 15} Under App.R. 12(A)(2), this panel may disregard an assignment of error "if the party raising it fails to identify in the record the error on which the assignment of error is based." Because it is not apparent from the record where the challenged evidence was admitted or whether any objections to the evidence were timely preserved, *see State v. Frazier*, 2007-Ohio-5048, ¶ 133 (failure to renew objection when evidence introduced at trial after a motion in limine is denied waives all but plain error), we cannot consider the argument as presented. The second assignment of error is overruled.

{¶ 16} In the third and final assignment of error, W.A. Smith claims the trial court erred in presenting an issue of law to the trier of fact because the first jury interrogatory asked, "Do you find by a preponderance of the evidence that defendant MacDonald made a statement of fact about plaintiff?"[2] The jury answered that question in the negative, resulting in a verdict in MacDonald's favor. Although W.A. Smith complains that the jury was permitted to reach the ultimate conclusion as to whether the Google review was one of fact or opinion, it introduced that error well before trial.

---

[2] Although there were two plaintiffs and the jury interrogatory only referenced one of the plaintiffs, the trial court rendered a final judgment in favor of MacDonald as against both "plaintiffs." W.A. Smith does not challenge or discuss that aberration.

{¶ 17} The interrogatory submitted to the jury, upon which the third assignment of error is based, was proposed by W.A. Smith and accepted by the trial court. Further, W.A. Smith failed to object to the proposed interrogatory at trial, conceding that the first interrogatory is "fine the way it is." Tr. 534:12-13. The doctrine of invited error provides "that a litigant may not 'take advantage of an error which he himself invited or induced.'" *State v. Garrett*, 2022-Ohio-4218, ¶ 203, quoting *Hal Artz Lincoln-Mercury Inc. v. Ford Motor Co. Lincoln—Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. W.A. Smith proposed the language used by the trial court and conceded that language was satisfactory. Accordingly, the jury's reach into the legal question of whether the disputed statements were fact or opinion was, at best, invited error. The third assignment of error is overruled.

{¶ 18} The judgment in favor of MacDonald is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

WILLIAM A. KLATT, J.,* CONCURS;
MARY J. BOYLE, P.J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)

MARY J. BOYLE, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 19} I respectfully concur in part and dissent in part with the majority opinion.  I agree with the majority's decision to affirm the denial of summary judgment as it relates to damages, finding genuine issues of material fact exist as to the extent of the harm caused to W.A. Smith's trade or occupation.  I disagree, however, with the majority's decision to affirm the denial of summary judgment on the issue of liability.  I would find that W.A. Smith is entitled to summary judgment, as a matter law, and the statements in the Google review were facts and constituted defamation per se.

{¶ 20} While the facts are straightforward as the majority notes, I find it necessary to recite the relevant facts and procedural history in more detail because W.A. Smith asks us to grant its motion for summary judgment, as a matter of law, which implies that we vacate the jury's verdict.

{¶ 21} In W.A. Smith's amended complaint, W.A. Smith alleges defamation and disparagement because of the Google review MacDonald posted in August 2022, at each of W.A. Smith's three locations. W.A. Smith alleges that the Google review is not an opinion about W.A. Smith's services, but rather is false statements of purported fact intended to harm W.A. Smith and W.A. Smith sustained damages as a result of this review. As W.A. Smith alleges, the nature of this case "arises out of the 1-star, defamatory review left by [MacDonald] on each of [W.A. Smith's] three locations in Ohio. These defamatory reviews contained patently false information about [W.A. Smith] under the guise of a 'customer review.' These defamatory reviews have irreparably harmed [W.A. Smith], as a google search of the company brought up [the Google] reviews for any and all customers and potential customers to see." (W.A. Smith's First Amended Complaint, Jan. 13, 2023.)

{¶ 22} W.A. Smith further alleges that contemporaneous to this review, MacDonald "posted a 5-star review of an unaffiliated company also called W.A. Smith, which is an auction house in Plainfield, New Hampshire." (W.A. Smith's First Amended Complaint, Jan. 13, 2023.) W.A. Smith alleges that MacDonald posted this review "to abuse the Google algorithm for business visibility in an attempt to promote the W.A. Smith auction house in New Hampshire at the detriment of [W.A. Smith.]" (W.A. Smith's First Amended Complaint, Jan. 13, 2023.)

{¶ 23} Following discovery, W.A. Smith filed a motion for summary judgment in March 2024, requesting the trial court determine that the published

statements were not constitutionally protected opinion, but rather were fact. In support of its motion W.A. Smith included MacDonald's deposition testimony, as well as the deposition testimony of his parents. In further support of its motion, W.A. Smith attached the published Google review (Exhibit A), notice from Google that the review was removed (Exhibit B), a spreadsheet indicating W.A. Smith's damages, which was filed under seal (Exhibit C), and an affidavit by William Smith (Exhibit D).

{¶ 24} W.A. Smith argued the evidence demonstrates that MacDonald, "with malicious intent, and in reckless disregard for the truth, published demonstrably false defamatory reviews of [W.A. Smith] on Google, causing irreparable harm to [W.A. Smith's] business, reputation, and ability to solicit customers." (W.A. Smith's Motion for Summary Judgment, p. 1.) W.A. Smith argued that by referring to terms of art in the financial services industry, such as "junk," "less than investment grade," and "higher than industry standard commissions," the statements in MacDonald's review were statements of fact that he admitted to publishing without any evidence or personal knowledge to support his assertions. As a result, W.A. Smith contended that the Google review was defamation per se and damages are presumed. Consequently, W.A. Smith maintained it is entitled to summary judgment, as a matter of law, because no genuine issue of material fact exists. W.A. Smith relied on the following evidence in support of its motion.

{¶ 25} W.A. Smith is an Ohio-based financial planning firm, with locations in Independence, Sheffield Village, and Sandusky. As a financial planning firm,

W.A. Smith assists its clients in managing their money and reaching their retirement goals. MacDonald is a resident of Texas and his parents reside in Ohio. MacDonald's parents purchased various investments and insurance products through W.A. Smith and its investment advisory affiliate, Great Lakes Retirement. MacDonald posted the review on each of W.A. Smith's Ohio-based business locations in response to learning that his mother ("Mother") had some concerns about one of the purchases.

{¶ 26} According to MacDonald, the basis for his review were two conversations he had with Mother, who stated that his father ("Father") purchased a Colorado Bankers Life Investment annuity, while a client of W.A. Smith, that lost its value. The first conversation took place in May 2022. Mother was upset at that time and discussed with MacDonald "how much money [she and Father] lost or [were] probably going to lose." (Mother's deposition, p. 10.) During their second conversation, which took place over the phone in August 2022, Mother expressed to MacDonald "they weren't going to get their money back." (MacDonald's Deposition, p. 60.) MacDonald testified at his deposition that

> this is the thing that kicked me the most, kicked me in the stomach, that I couldn't help my parents. [A W.A. Smith employee] said to them, "Suck it up. You guys have got other assets," or something to that effect; he said that to my parents. I'm sitting here in Texas, and I can't help my parents; they just lost $100,000.

> I got on Google, and I said W.A. Financial, and she said it was, and I confirmed that. And I looked them up at that point and I wrote the reviews right there on the spot. I did it in a hurried way, and that's why I made the error of putting that auction house, but I went back and corrected that.

(MacDonald's deposition, p. 60.)

{¶ 27} Both Mother and Father testified at their deposition that they did not tell MacDonald anything about commissions or fees, the investment grade of the product or that they were rated as junk products, or that they had lost their investment. Following the posts, W.A. Smith requested from Google that the reviews be removed. Google removed the posting from the Sheffield Village office shortly thereafter, and MacDonald removed the postings for the other two offices approximately four months later.

{¶ 28} Approximately three months later, MacDonald responded to this motion by filing a motion for leave to file memorandum contra to W.A. Smith's motion for summary judgment. W.A. Smith opposed MacDonald's motion, arguing that it was untimely and did not establish any genuine issue of material fact. The trial court denied MacDonald's motion as untimely, stating that it was "filed almost three months after [W.A. Smith] filed its motion for summary judgment. Further, [MacDonald] did not offer an explanation for the delay." (Journal Entry, June 18, 2024.) That same day, the court issued another journal entry denying W.A. Smith's motion for summary judgment. The trial court found that "[a]fter a careful review of the motion for summary judgment, the court determines that genuine issues of material fact remain to be litigated." (Journal Entry, June 18, 2024.) The court's decision contained no further analysis, nor did it conclude, as a matter of law, which of MacDonald's statements were fact or opinion.

{¶ 29} Following the denial of summary judgment, W.A. Smith submitted its proposed jury interrogatories and verdict forms. W.A. Smith also filed several motions in limine regarding several evidentiary issues. Approximately, three months later, W.A. Smith filed a motion to preclude MacDonald from introducing evidence at trial based upon his failure to file any pretrial documents, including an exhibit list, trial brief, or witness list. In response, MacDonald filed a brief in opposition to this motion and a witness and exhibit list, along with a trial brief, and motions in limine. W.A. Smith opposed these filings, arguing that they were untimely.

{¶ 30} Then in December 2024, the matter proceeded to a jury trial. Prior to the start of trial, the court heard arguments on the motions in limine and denied all of W.A. Smith's motions. Notably, when addressing W.A. Smith's request that the court determine whether MacDonald's statement was one of opinion or fact, the trial court agreed that it was a question of law. The court stated:

> THE COURT: You can make that case during your case in chief and on their case, but in terms of whether evidence is going to be admitted, the Court is going to deny the motion because the issue of whether something is fact or opinion is a critical determination for a case like this, so . . . the Court is not going to disallow evidence of whether it's fact or opinion. That's a critical analysis that has to be made.
>
> [COUNSEL FOR W.A. SMITH]: I understand, Your Honor, but for the record it's a question of law, not a question of fact.
>
> THE COURT: Right. But at this point all I have is the complaint, the answer, motion for summary judgment, motion in opposition and a flurry of briefs.

The Court has not determined whether it's — I know what the statements are, but that will be something that — that issue of law will be settled before it goes to the jury.

[COUNSEL FOR W.A. SMITH]: Thank you, Your Honor.

(Tr. 13-14.)

{¶ 31} Following the presentation of the evidence, the court instructed the jury and submitted the following interrogatory to the jury: "Do you find by a preponderance of the evidence that [MacDonald] made a statement of fact about [W.A. Smith]?" (Jury Interrogatory No. 1). The jury answered "no" to this interrogatory. Having concluded that it was a statement of opinion, the jury found in MacDonald's favor. After the jury's verdict, W.A. Smith filed a motion for judgment notwithstanding the verdict and a motion for new trial, arguing that the jury improperly decided an issue of law when it determined that MacDonald's statements were statements of opinion rather than statements of fact. This motion went unopposed and was denied by the trial court.

**Summary-Judgment Motion**

{¶ 32} As an initial matter, I must address the majority opinion's conclusion that W.A. Smith did not comply with the party-presentation principle recently emphasized by the Ohio Supreme Court in *Old World*, 2025-Ohio-1875 at ¶ 4. I disagree with the majority opinion's interpretation of *Old World*. According to the majority, because MacDonald did not ask the trial court for a determination that the statement was an opinion, *Old World* precludes the trial court and us from declaring

any of the statements to be an opinion on MacDonald's behalf. I do not find that *Old World* supports this conclusion.

{¶ 33} In *Old World*, a dispute arose among the parties, and the plaintiffs filed a complaint against the defendant, alleging, among other claims, fraud and breach of contract. The defendant filed a motion to stay the litigation and compel arbitration in accordance with the arbitration clause in the parties' agreement. The trial court granted the defendant's motion without holding an oral hearing. *Id.* at ¶ 1.

{¶ 34} On appeal, the plaintiffs argued that "the trial court erred when it granted [defendant's] motion to stay and compel arbitration because the arbitration clause was void due to fraudulent inducement." *Id.* at ¶ 2. The Ninth District Court of Appeals did not address the merits of the plaintiffs' argument but instead reversed the trial court's judgment on a statutory question neither party raised. The appellate court found the trial court erred by failing to hold an oral hearing on the motion. *Id.*

{¶ 35} The Ohio Supreme Court accepted review to determine whether an oral hearing was required pursuant to statute. *Id.* at ¶ 3. The Court, however, did not reach this question because of the party-presentation principle. The *Old World* Court noted that "neither party requested a hearing before the trial court on the motion to stay and compel arbitration and that neither party raised before the Ninth District as an assignment of error on appeal the issue of the trial court's failure to hold an oral hearing on the motion." *Id.* at ¶ 4. The Court reiterated:

> "[O]ur judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties." *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15, citing *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S. Ct. 2559, 171 L.Ed. 2d 399 (2008). Under the principle of party presentation, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw* at 243.

*Id.* The Court found that the Ninth District "violated the party-presentation principle when it reversed the trial court's order compelling arbitration on the grounds that the trial court did not hold an oral hearing on the motion." *Id.* As a result, the *Old World* Court vacated the Ninth District Court of Appeals' judgment and remanded the matter for that court consider whether the arbitration clause is void because of fraudulent inducement. *Id.*

{¶ 36} Based on the foregoing, I find that the majority misinterprets *Old World*. Nowhere in *Old World* does it state that the trial court is precluded from making a determination as a matter of law — a determination that requires the trial court to interpret the law accurately and decide whether the case can be resolved without further examination of evidence or witness testimony. Rather, *Old World* reiterates that we rely on the parties to frame the issues for decision, which is precisely what W.A Smith did in this case and MacDonald failed to do when he did not timely oppose or refute the Civ.R. 56 evidence presented by W.A. Smith.

{¶ 37} Here, W.A. Smith advanced the theory, in its motion for summary judgment, that the statements in the Google review were ones of fact and were defamatory per se, which presumes harm to W.A. Smith's trade or occupation. I

find that this satisfies the party-presentation principle. As discussed in more detail below, the determination of fact versus opinion is one for the trial court to make as a matter of law — not the jury's as the majority contends.[3] I find it disingenuous for the majority opinion to rely on *Old World* as justification for MacDonald's failure to oppose summary judgment and the trial court's failure to make the determination as a matter of law. In intentional tort cases like this one, the law is clear: whether a statement is opinion or fact or whether a statement is defamatory per se are both questions of law for the court to decide. *See Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986), and *Sullins v. Raycom Media, Inc.*, 2013-Ohio-3530, ¶ 17 (8th Dist.).

{¶ 38} Based on the evidence presented and the law supporting it, W.A. Smith unequivocally requested that the trial court find as a matter of law that MacDonald's Google review met the elements of defamation per se in that the statements published were "fact" and not "opinion." W.A. Smith also provided evidence of the irreparable harm MacDonald caused by publishing demonstrably false statements, with malicious intent and no factual knowledge to support these statements of facts published. It was the trial court's obligation to make this determination, not the jury's as the majority contends.

---

[3] In paragraph 9, the majority contends that it was within the jury's province to determine whether the statements were opinion. Notably, the majority makes this assertion without any caselaw to support its position.

{¶ 39} MacDonald, however, failed to timely file a brief in opposition and can point to no Civ.R. 56 evidence that could be considered by this court or the trial court to rebut W.A. Smith. The only evidence before us is the evidence presented and thoroughly discussed by W.A. Smith in its summary-judgment motion. In fact, MacDonald did not raise any defenses or arguments in a brief in opposition to support the majority opinion's conclusion that the Google review was opinion or that any defenses, such as truth, apply in order to not hold him liable. The majority's reasoning in reaching this conclusion without any discussion of the unrefuted evidence is circular and in direct contravention of the party-presentation principle. Indeed, if as the majority states, because MacDonald did not raise these defenses with the trial court, then the trial court was not permitted to advocate on MacDonald's behalf and either can this court.

{¶ 40} Finding that W.A. Smith properly complied with the party-presentation principle, my discussion will focus on the first assignment of error, which I would find is determinative of this appeal. In this assigned error, W.A. Smith argues the trial court erred when it denied its motion for summary judgment "without opinion" because MacDonald failed to oppose the motion with any evidence giving rise to a genuine issue of material fact.

**Standard of Review**

{¶ 41} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, this court affords no deference to the trial court's decision and

independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 42} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217 (1994).

{¶ 43} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* "To accomplish this, the movant must be able to point to the evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Id.* These include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). "These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher at 293.*

{¶ 44} If the moving party failed to meet this burden, then summary judgment is not appropriate. However, if the moving party satisfies this initial burden, then the nonmoving party has the burden to set forth specific facts by the means listed above in Civ.R. 56(C) demonstrating that there is a genuine issue of material fact. *Id.*[4] Notably, "[t]he nonmoving party's reciprocal duty does not, however, relieve a trial court of its mandatory duty to review 'the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, [that are] timely filed in the action.'" *Hudson v. Hapner*, 2016-Ohio-1347, ¶ 22 (4th Dist.), quoting Civ.R. 56(C).

{¶ 45} In *Hartman v. Kerch*, 2023-Ohio-1972, we reiterated that "'[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.'" *Id.* at ¶ 31, quoting *Am. Dental Ctr. v. Wunderle*, 1993 Ohio App. LEXIS 4437, *4 (8th Dist. Sept. 16, 1993), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). As this court has explained:

> "[T]he plain language of the summary judgment rule mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial."

---

[4] Additionally, affidavits in support of motions for summary judgment are governed by Civ.R. 56(E), which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

(Citations omitted.) *Corradi v. Soclof*, 1995 Ohio App. LEXIS 2162, *6-*7 (8th Dist. May 25, 1995), quoting *Toensing v. MK-Ferguson Co.*, 76 Ohio App.3d 826, 830 (8th Dist. 1992), citing *Celotex Corp.* at 323-324.

{¶ 46} I agree with the majority in that it is not error to deny an unopposed motion for summary judgment and the denial of summary judgment is generally deemed moot following a trial on the same factual issues raised in the motion for summary judgment. I also agree that an exception to this general rule is if the motion for summary judgment presents a purely legal question dispositive of the case. Where I diverge from the majority opinion is its conclusion that "W.A. Smith does not identify any pure issue of law that would support granting" motion for summary judgment in its favor. The Ohio Supreme Court has made it clear "that the denial of a motion for summary judgment is not harmless when the denial was predicated on a pure question of law, *see Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 158, 642 N.E.2d 615 (1994)." *Bliss*, 2022-Ohio-4366 at ¶ 14.

{¶ 47} I would find that the denial of W.A. Smith's motion for summary judgment was not moot or harmless because, in intentional tort cases like the case at hand, the trial court should have determined, as a matter of law, whether MacDonald's statements in the Google review were fact or opinion. During its discussion regarding the pending motions in limine, the trial court agreed with W.A. Smith that it was a question of law for the court to determine whether MacDonald's statements were one of opinion or fact, yet failed to do so. The court stated: "I know what the statements are, but that will be something that — that issue of law will be

settled before it goes to the jury." (Tr. 14.) It was error for the trial court to find that genuine issues of material fact remain to be litigated, without determining, as a matter of law, which statements contained in MacDonald's Google review were expressions of his opinions or statements of fact. As the Ohio Supreme Court stated, "It is axiomatic that . . . courts have no discretion to make errors of law, *see Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 39." *Bliss*, 2022-Ohio-4366 at ¶ 13. Because the trial court failed to do so, the onus is on this court, in its novo review, to make that determination.[5]

{¶ 48} Because the issue of whether the statements were ones of fact or opinion is to be decided as a matter of law, I proceed with my review of the merits of W.A. Smith's summary-judgment motion.

**Defamation Per Se**

{¶ 49} "Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." *Kanjuka v. MetroHealth Med. Ctr.*, 2002-Ohio-

---

[5] I find *Bliss v. Manville*, 2021-Ohio-1673 (6th Dist.) ("*Bliss I*"), instructive on this point. In *Bliss I*, plaintiff's husband was injured while operating a machine on the job. Defendant filed a motion for summary judgment in which it alleged that plaintiff's evidence did not establish that it acted with the requisite deliberate intent to injure another under R.C. 2745.01. Plaintiff filed a response supported by an expert affidavit. Following the conclusion of trial, the jury found in plaintiff's favor. On appeal, the Sixth District Court of Appeals found that the trial court failed to determine the issue of law concerning the meaning of equipment safety guard under the statute. The Sixth District then held, as a matter of law, that the equipment at issue did not constitute an "equipment safety guard" under R.C. 2745.01 and concluded that summary judgment should have been granted in defendant's favor and that the case should not have been given to the jury. *Id.* at ¶ 37, 45.

6803, ¶ 15 (8th Dist.). To establish a claim for defamation, a plaintiff must demonstrate: (1) a false statement of fact was made about the plaintiff, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77, citing *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist. 1996).

**The Google Review**

{¶ 50} As part of the analysis, it is important to reiterate the review MacDonald published on Google:



★ ★ ★ ★ ★
jmacdonaldlaw

AVOID THIS COMPANY BY ALL MEANS. They sell less than investment grade products that provide higher than industry standards commissions to their investment advisors. In fact, they sell junk products to which some of the companies of the products were engaging in fraud and swindled clients out of their retirement money. RUN RUN ... far away from this company. I am aware of clients losing thousands from this company.

(W.A. Smith's Brief, p. 12.)

{¶ 51} Here, W.A. Smith claimed in its unopposed motion for summary judgment that MacDonald's Google review rises to the level of defamation and falls within the class of defamatory statements known as defamation per se. In order for W.A. Smith to be entitled to judgment as a matter of law on its motion for summary judgment, it must prove no genuine issues of material fact remain as to all elements establishing MacDonald's liability. Conversely, MacDonald must demonstrate that either (1) no genuine issues of material fact remain as to W.A. Smith establishing

*any one* of the essential elements of its defamation claim, or (2) no genuine issues of material fact remain as to *all* elements of MacDonald's defense.

{¶ 52} For the reasons set forth below and based on our de novo review, I would find that the following statements from the Google review are fact. With no factual knowledge to support the statements of fact, MacDonald brazenly published:

- "[Plaintiff] sell[s] less than investment grade products";

- Plaintiff sells products "that provide higher than industry standards commissions";

- "[Plaintiff] sell[s] junk products"; and

- "[MacDonald] is aware of clients losing thousands from this company."

### 1. The First Element: Whether a False Statement of Fact was Made about W.A. Smith

#### a. True or False

{¶ 53} A plaintiff must prove falsity as an essential element of a defamation claim and, because falsity is an essential element, a true statement cannot provide the basis for such an action. *Natl. Medic Servs. Corp. v. E. W. Scripps Co.*, 61 Ohio App.3d 752, 755 (1st Dist. 1989). Therefore, "[i]n Ohio, truth is a complete defense to a claim for defamation." *Montgomery v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-1198, ¶ 30 (8th Dist.), citing *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 445 (1996); *see also Swoope v. Osagie*, 2016-Ohio-8046, ¶ 33 (8th Dist.) (noting that while a plaintiff must prove falsity as an element of a defamation claim, a publisher may also "completely defend" a defamation action by showing substantial truth). "'It is sufficient [in defending against a defamation action] to

show that the imputation is substantially true, or as it is often put, to justify the "gist," the "sting," or the substantial truth of the defamation.'" *Krems v. Univ. Hosps. of Cleveland,* 133 Ohio App.3d 6, 9 (8th Dist. 1999), quoting Prosser, *The Law of Torts*, 798-799 (4th Ed. 1971).

{¶ 54} W.A. Smith argues in its motion for summary judgment and on appeal that MacDonald's statements in the Google review were false statements of fact regarding the services it provides because MacDonald had no supporting documentation or knowledge to substantiate any of the statements he made in the review. My review of the record and Civ.R. 56 evidence reveals the same. Each statement at issue is objectively disprovable through the evidence presented by W.A. Smith in its summary-judgment motion.

{¶ 55} MacDonald testified the only "client" he is aware of that purchased any product while being a client of W.A. Smith was his father. Furthermore, his parents testified at their deposition that they did not tell MacDonald anything about "commissions" or "fees," the "investment grade of the product" or that they were rated as "junk" products, or that they had lost their investment:

> [COUNSEL FOR W.A. SMITH]: Any clients other than your parents that —
>
> [MACDONALD]: I don't know. I'm not aware of others.
>
> [COUNSEL FOR W.A. SMITH]: Okay. Are you aware of anyone other than your father who owned a Colorado Bankers Life annuity product?
>
> [MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]: Are you aware of anyone other than your father to whom W.A. Smith allegedly sold "less than investment grade products" or "junk products"?

[MACDONALD]: I'm not aware of anyone else.

. . .

[COUNSEL FOR W.A. SMITH]: MacDonald, do you have any documents showing that any products sold by W.A. Smith are "less than investment grade"?

[MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]: Have you ever seen any such documents?

[MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]: Do you have any documents showing any products sold by W.A. Smith that "provide higher than industry standards commissions"?

[MACDONALD]: No. That's an opinion.

[COUNSEL FOR W.A. SMITH]: So the answer to my question is no, you don't have any such documents?

[MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]: Have you ever seen any such documents?

[MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]: Do you have any documents showing what "industry standards commissions" are?

[MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]: Have you ever seen any such documents?

[MACDONALD]: No.

[COUNSEL FOR W.A. SMITH]:  Do you have any documents showing what commissions were charged by Colorado Bankers Life?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Have you ever seen any such documents?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Do you have any documents showing what W.A. Smith received in commissions for the sale of the Colorado Bankers Life product?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Have you ever seen any such documents?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Do you have any documents showing or defining the term "investment grade products"?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Have you ever seen any such documents?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Do you have any documents showing that the Colorado Bankers Life product was "less than investment grade"?

. . .

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  Have you ever seen any such documents?

[MACDONALD]:  No.

[COUNSEL FOR W.A. SMITH]:  What commissions were paid to W.A. Smith by the Colorado Bankers Life company?

[MACDONALD]:  I don't know.

[COUNSEL FOR W.A. SMITH]:  Do you know what the Colorado Bankers Life product was?

[MACDONALD]:  An annuity.

[COUNSEL FOR W.A. SMITH]:  How much did your father invest in the annuity?

[MACDONALD]:  I was told 100,000.

[COUNSEL FOR W.A. SMITH]:  Told by whom?

[MACDONALD]:  My mom.

[COUNSEL FOR W.A. SMITH]:  Okay. How much in interest payments did your father receive from Colorado Bankers Life?

[MACDONALD]:  I don't know.

[COUNSEL FOR W.A. SMITH]:  How much is your father eligible to receive from State Guaranty Associations due to the Colorado Bankers Life Liquidation Order?

[MACDONALD]:  I don't know what that is.

[COUNSEL FOR W.A. SMITH]:  Do you know whether or not your father  took advantage of the State Guaranty under the Liquidation Order?

[MACDONALD]:  I don't know what that is.

[COUNSEL FOR W.A. SMITH]:  Do you know anything about any other investments that your parents maintained at [W.A. Smith]?

[MACDONALD]:  I don't.

(MacDonald deposition, p. 39-43.)

{¶ 56} Unequivocally, the evidence reveals that MacDonald was not a client of W.A. Smith and had no personal knowledge of the products or services it provided. Mother and Father's testimony further supports that the statements made by MacDonald were verifiably disproved and false. His father admitted that he had not lost any money in the product. Moreover, his mother told him that they were "worried" that they might not get their money back, not that it was lost, they were overcharged commissions, they were sold a product that was less than investment grade, or they were sold a product that was rated as junk.

{¶ 57} Rather, the uncontroverted Civ.R. 56 evidence W.A. Smith submitted demonstrated that the product at issue was rated good at the time it was sold, it was above investment grade, and it was not rated as junk. According to William Smith's own affidavit, Exhibit D, the published Google review caused irreparable harm to W.A. Smith's business. It is disingenuous of the majority opinion to claim otherwise. Therefore, I would find that the above-delineated statements were false statements made about W.A. Smith.

#### b. Fact or Opinion

{¶ 58} The first element of a defamation claim also requires the alleged defamatory statement be one of fact rather than opinion. The expression of an opinion is generally immune from liability under the Ohio and United States Constitutions. *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280 (1995). "'This is because 'there is no such thing as a false idea.'" *Lograsso v. Frey*, 2014-Ohio-2054, ¶ 30 (8th Dist.), quoting *Gertz v. Robert Welch*, 418 U.S. 323, 339

(1974). Whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court. *Scott*, 25 Ohio St.3d at 250 (1986), citing *Ollman v. Evans*, 750 F.2d 970, 978 (D.C. Cir. 1984); *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir. 1983); *Lewis v. Time, Inc.*, 710 F.2d 549, 553 (9th Cir. 1983); *Slawik v. News-Journal Co.*, 428 A.2d 15, 17 (Del. 1981). To answer this question, a court must determine whether a reasonable reader or hearer will perceive the statement as a fact or opinion. *McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 144 (2000). "The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." *Id.* at 145.

{¶ 59} Furthermore, "it is a fundamental tenet of jury trial procedure that the judge decides questions of law, and the jury, as factfinder, then decides questions of fact." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 436 (1996). As the Ohio Supreme Court stated, "[T]he predictability of decisions, which is of crucial importance in an area of law touching upon First Amendment values, is enhanced when the determination is made according to announced legal standards and when a body of public case law furnishes published examples of the manner in which these standards are to be applied. (Citations omitted.)" *Wampler v. Higgins*, 93 Ohio St.3d 111, 126-127 (2001), citing *Ollman* at 978. In *Wampler*, the Ohio Supreme agreed with the *Ollman* Court that "the applicability of the *Ollman/Scott/Vail* 'opinion privilege' in a given case is a question of law for the court" to decide. *Id.* at 127.

{¶ 60} In determining whether an allegedly defamatory statement constitutes an opinion, Ohio courts apply a totality-of-the-circumstances analysis and consider the following four factors: (1) the specific language at issue, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appeared. *Scott* at 250. The application of this test is "fluid," and the weight given to any one factor will necessarily vary depending on the circumstances of each case. *Id.*

{¶ 61} W.A. Smith argues that MacDonald was not opining on the quality of its services or the products they sold. Rather, he made factual assertions that, among other things, W.A. Smith purportedly sold "less than investment grade" products, products that paid "higher than industry standard commissions," and "junk products." The majority argues that the trial court's failure to designate the statements as an opinion or fact benefited W.A. Smith because it was able to present the defamation question on all the statements in the review. The majority's reasoning misses the mark. The fact versus opinion issue was never one for the jury to decide. And because the trial court did not make this determination as a matter of law, I find it necessary to conduct an independent assessment of the Google review utilizing the totality-of-the-circumstances analysis.

### i. Specific Language Used

{¶ 62} The assessment of the totality of the circumstances begins with an analysis of "'the common usage or meaning of the allegedly defamatory words themselves * * * to determine whether the allegedly defamatory statement has a

precise meaning and thus is likely to give rise to clear factual implications.'" *Wampler*, 93 Ohio St.3d 111, 128 (2001), quoting *Ollman*, 750 F.2d at 979-980 (D.C. Cir. 1984). The *Wampler* Court explained:

> "A classic example of a statement with a well-defined meaning is an accusation of a crime" whereas "statements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation." "Readers are * * * considerably less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood meaning."

(Citations omitted.) *Id.*, quoting *id.*

{¶ 63} Here, I would find that the specific words MacDonald used in his Google review have factual implications regarding the ethics of W.A. Smith's business. MacDonald stated that W.A. Smith sells "less than investment grade products"; products that "provide higher than industry standards commissions"; and "junk products." MacDonald made assertions purportedly based on his own knowledge that he is "aware of clients losing thousands from W.A. Smith." MacDonald's review leaves the impression W.A. Smith does not provide sound financial advice for their clients, and instead, pushes unsuitable products to unsuspecting clients with the sole purpose of increasing commissions. Thus, I would find that the specific industry language MacDonald used has a precise meaning and demonstrates that his statements were those of fact, not opinion. I would find that this factor weighs in W.A. Smith's favor.

### ii. Verifiability

{¶ 64} The next totality-of-the-circumstances factor seeks "to determine whether the allegedly defamatory statements are objectively capable of proof or disproof" because "'a reader cannot rationally view an unverifiable statement as conveying actual facts.'" *Wampler* at 129, quoting *Ollman* at 981. "If the publication implies that the defendant has 'first-hand knowledge that substantiates the opinions he asserts,' it is more likely that the statement is one of fact and not opinion." *Hersh v. Grumer*, 2021-Ohio-2582, ¶ 72 (8th Dist.), quoting *Vail*, 72 Ohio St.3d 279 at 283 (1995).

{¶ 65} I would find that the Google review is objectively capable of proof or disproof. MacDonald's statements refer to terms of art in the financial services industry, and any allegations regarding (1) "junk products"; (2) "investment grade" on products; (3) commissions earned, and/or (4) client portfolio performance, can be proven or disproven. MacDonald's parents' testimony supports that the statements made by MacDonald were verifiably disproved and false. Father admitted that he had not lost any money in this product and that his mother told him that they were "worried" that they might not get their money back, not that it was lost, not that they were overcharged commissions, not they were sold a product that was less than investment grade, and not that they were sold a product that was rated as junk. Further, W.A. Smith argued that the witnesses, exhibits, that the evidence established that the product at issue was rated good at the time it was sold, that it was above investment grade, and that it was not rated as junk.

**{¶ 66}** Thus, I would find that this factor weighs in W.A. Smith's favor.

### iii. General Context

**{¶ 67}** We now turn to the first "contextual" assessment of the totality-of-the-circumstances inquiry, which seeks to consider the "'immediate context' in which the allegedly defamatory statement appears." *Wampler* at 130, quoting *Ollman* at 983. The *Wampler* Court explained:

> We examine more than simply the alleged defamatory statements in isolation, because the language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer. Put another way, * * * courts should assess "the entire article or column" because "unchallenged language surrounding the allegedly defamatory statement will influence the average reader's readiness to infer that a particular statement has factual content." (Citations omitted.)

*Id.*, citing *Scott*, 25 Ohio St.3d 243 at 252 (1986), and quoting *Ollman* at 979.

**{¶ 68}** Considering the entire Google review in context, I would find that the average reader would likely infer that the Google review was factual. It is clear that the statements are based on purported facts of MacDonald's own knowledge, with MacDonald providing false statements of fact regarding the services provided by W.A. Smith. The defamatory statements, read in whole, demonstrate that MacDonald is not representing his opinion on the quality of services provided by W.A. Smith, and instead is providing the public with erroneous statements of the actual services provided by W.A. Smith with the sole goal of dissuading prospective clients from utilizing W.A. Smith's services. I would find that this factor weighs in W.A. Smith's favor.

### iv. Broad Context

{¶ 69} Lastly, we examine the allegedly defamatory statement in "'the broader social context into which the statement fits.'" *Wampler* at 131 quoting *Ollman* at 983. The *Wampler* Court noted:

> "Some *types of writing or speech by custom or convention* signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." This fourth factor focuses, then, not merely on the internal context within which a particular written statement appears, but on the unmistakable influence that certain "well established genres of writing will have on the average reader."

(Citations omitted and emphasis in original.) *Id.*, quoting *id.* at 983-984. For example, opinion pages of the newspaper are "traditionally linked to vigorous expressions of opinion regarding matters of public concern." *Id.* (finding that letters to the editor qualify as a "well established genre" of opinionated speech), citing *Vail*, 72 Ohio St.3d 279 at 282, (1995) and *Ollman* at 984; *Scott* at 253 (finding that the sports page was a "traditional haven for cajoling, invective, and hyperbole").

{¶ 70} In this case, MacDonald posted his review on the internet, specifically a Google review. I recognize that the internet "generally promotes a more relaxed type of communication." *R. James Amaro, P.C. v. DeMichael*, 2024-Ohio-3290, ¶ 34 (5th Dist.). However, "[w]hile very generalized comments or reviews on the Internet that lack specificity may signal to a reader there is no factual basis for the review, specifics may signal the opposite." *Id.*, citing *Bently Res. LP v. Papaliolios*, 218 Cal. App.4th 418 (2013).

{¶ 71} I would find that because of the placement on the review on Google and the factually specific statements made by MacDonald, it could reasonably be understood as conveying provable facts even though MacDonald had no supporting documentation or knowledge to substantiate any of the statements made in the Google review. MacDonald was never a client of W.A. Smith's. MacDonald had no knowledge regarding the "investment grade" of any "product" sold by W.A. Smith. MacDonald had no knowledge as to whether any of the products sold by W.A. Smith were classified as "junk products." MacDonald had no knowledge of the performance of any investment portfolio of any of W.A. Smith's clients. Accordingly, I would find that this factor weighs in favor of W.A. Smith.

{¶ 72} Because the totality-of-circumstances factors indicate the Google review was one of fact, I disagree with the majority's finding that the review was opinion. Therefore, I proceed to the next element of defamation.

### 2. The Second Element: Whether the Statement was Defamatory

{¶ 73} A defamatory is per se when a statement is defamatory on its face:

> "Defamation per se means that the defamation 'is accomplished by the very words spoken.' * * * In order for a statement to be defamatory per se, it must 'consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation.'"

*Hartman*, 2023-Ohio-1972, at ¶ 57 (8th Dist.), quoting *Kanjuka*, 2002-Ohio-6803, ¶ 16 (8th Dist.), quoting *McCartney v. Oblates of St. Francis De Sales*, 80 Ohio App.3d 345 (6th Dist. 1992).

{¶ 74} "If an alleged defamatory statement is unambiguous, whether it is defamatory per se is a question of law for the court to determine." *Sullins*, 2013-Ohio-3530 at ¶ 17 (8th Dist.), citing *Gosden*, 116 Ohio App.3d at 207 (9th Dist. 1996), citing *Becker v. Toulmin*, 165 Ohio St. 549, 555 (1956) ("[W]here words of a publication are not uncertain and ambiguous as to their definition, it is a question for the court whether they constitute libel per se."). "'Ohio follows the innocent construction rule in adjudging defamatory statements.'" *Boulger v. Woods*, 917 F.3d 471, 483 (6th Cir. 2019), quoting *New Olde Village Jewelers, Inc. v. Outlet Comm., Inc.*, 202 F.3d 269 (6th Cir. 2000) (table opinion). The "innocent construction rule" provides, "if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 372 (1983), citing *England v. Automatic Canteen Co.*, 349 F.2d 989 (6th Cir. 1965).

{¶ 75} Under this rule, "'[i]t matters not that the defamatory meaning is the more obvious one. So long as the statement may reasonably be read to have an innocent meaning, the innocent construction rule commands that the statement be deemed non-defamatory.'" *Boulger* at 483, quoting *New Olde Village Jewelers, Inc.* "Thus, it follows that if a statement is defamatory per se, the innocent construction rule cannot be applied, for the thrust of the innocent construction rule is that the statement has more than one interpretation." *Murray v. Knight-Ridder, Inc.*, 2004-Ohio-821, ¶ 31 (7th Dist.).

{¶ 76} W.A. Smith argues that the statements in the Google review are defamatory per se.  According to W.A. Smith, there is "no doubt" MacDonald's statements in the Google review tend to injure its trade or occupation.  Specifically, W.A. Smith contends that the Google review suggests that W.A. Smith ignored its obligations to its clients and recommended "junk products" and "less than investment grade products," with the sole purpose of increasing commissions above the market rate.

{¶ 77} In this case, the plain language of the Google review accuses W.A. Smith of unethical behavior and impugns W.A. Smith' business practices, yet the evidence established that MacDonald was not a client of W.A. Smith's and had no personal knowledge of the products or services it provided.  The supporting evidence also established that W.A. Smith has never sold a "below investment grade product," a product classified as "junk," or a product that "paid higher than industry standard commission."  I would find that these defamatory statements were written with the goal of injuring W.A. Smith's trade or occupation.  The record is clear that, despite making these outlandishly false statements, MacDonald had no supporting documentation or knowledge to substantiate any of the statements made in the Google review.  In fact, the only information MacDonald had was based on two brief conversations with his mother regarding one annuity purchased by MacDonald's father — a client of W.A. Smith's — that may have lost some of its value.  Google itself determined that MacDonald's review violated Google's policies because Google

removed one of MacDonald's Google reviews posted on W.A. Smith's Sheffield Village office location.

{¶ 78} I would agree with W.A. Smith and find that the above-delineated statements in the Google review are defamatory per se. *See Wbitt Sturtevant, LLP v. NC Plaza, LLC*, Franklin C.P. No. 12CVH-12-15282, 25 (Sept. 8, 2014) ("That statement alone accuses [plaintiffs] of unethical behavior under the code of professional responsibility for attorneys. The false statements published by the defendants had no basis in fact and clearly had a 'tendency to injure the plaintiff in (its) trade or occupation.'" *Id.*, quoting *Williams v. Gannett Satellite Information Network, Inc.*, 2005-Ohio-4141, ¶ 8 (1st Dist.)).

### 3. The Third Element: Whether the Statement was Published

{¶ 79} "'Publication of a defamatory matter is its communication intentionally or by a negligent act to one other that the person defamed.'" *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993), quoting 3 Restatement of the Law 2d, Torts (1965), Section 577(1). Publication is accomplished by any act communicating the defamatory matter to a third party; communication to only one person is sufficient. *Id.*, citing *id.* at Comments a-b (finding confidential grievance complaint to a local bar association constituted a publication). Thus, "publication" does not require widespread dissemination for the purposes of defamation. *Id.*; *Welling v. Weinfeld*, 2007-Ohio-2451, ¶ 53 ("[P]ublication" for defamation purposes is a word of art, which includes any communication by the defendant to a third person.).

{¶ 80} Here, there is no dispute that the Google review was published. MacDonald admits that he posted it on each of W.A. Smith's three locations in Ohio. He also posted the review with an unaffiliated company also called W.A. Smith, which is an auction house in New Hampshire. Based on the foregoing, there is no question that MacDonald's Google review was false — as is presumed with statements that are defamatory per se — and MacDonald failed to present any Civ.R. 56 evidence to the contrary. Therefore, I would find that publication was accomplished when MacDonald posted the Google review.

**4. The Fourth Element: Whether W.A. Smith suffered injury as a result of publication**

{¶ 81} "'With defamation per se, damages and actual malice are presumed.'" *Kanjuka*, 2002-Ohio-6803, at ¶ 16 (8th Dist.), quoting *McCartney*, 80 Ohio App.3d 345 (6th Dist. 1992). "However, 'the presumptions are rebuttable.'" *Shury v. Cusato*, 2022-Ohio-4401, ¶ 34 (8th Dist.), quoting *Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶ 28 (7th Dist.), citing *Sayavich v. Creatore*, 2009-Ohio-5270, ¶ 93-94 (7th Dist.) (presumption of damages in a defamation per se claim is rebuttable); *see also Wilson v. Wilson*, 2007-Ohio-178, ¶ 14 (2d Dist.) (Defendant rebutted the presumption of compensatory damages in her motion for summary judgment, and plaintiff failed to meet his reciprocal burden and show a genuine issue of material fact remained for trial.).

{¶ 82} W.A. Smith argues that because the Google review was defamatory per se, damages are presumed. According to Smith's own affidavit, Exhibit D to

W.A. Smith's motion for summary judgment, the published Google review caused irreparable harm to it to the tune of $1.2 million in estimated revenue. I agree with W.A. Smith that its reputation has been damaged. Indeed, the unopposed Civ.R. 56 evidence W.A. Smith provided established that MacDonald published three Google reviews on the internet for all to see. It further demonstrated that Google only removed one review for the Sheffield location, leaving the other reviews posted relating to Smith's Independence and Sandusky locations for months. It is well-known that reviews have profound effects on businesses and that they can make or break their futures. In today's world, consumers often look to online reviews before purchasing an item or service. Online reviews effect consumer trust, reputations, and purchasing decisions.

{¶ 83} I would find, however, that a genuine issue of material fact remains as to the extent of that damage. Therefore, it is necessary to address the final element of defamation.

### 5. The Fifth Element: Whether MacDonald Acted with the Requisite Degree of Fault in Publishing the Google Review

{¶ 84} As established above, actual malice is presumed when a statement is defamatory per se. W.A. Smith argues that because it established that MacDonald's statements were defamatory per se, it also established that MacDonald acted with the requisite degree of fault. I agree and note that while the qualified privilege exception was pled in MacDonald's answer, he did not assert the exception at the

summary-judgment stage of the proceedings and it is not the duty of this court to make the argument for him. *Snyder*, 2025-Ohio-1875 at ¶ 4.

{¶ 85} Accordingly, I would find that the trial court erred in denying W.A. Smith's motion for summary as to liability. Holding MacDonald liable for defamation per se, however, does not end the discussion because by its very nature, damages are presumed. As a result, I would remand the matter, not for a do-over, but for the factfinder to determine the extent of W.A. Smith's damages.

{¶ 86} In reaching this decision, I am mindful of the mandatory duty Civ.R. 56(C) "places on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992), syllabus. In this case, W.A. Smith provided the trial court with uncontroverted evidence in support of its summary-judgment arguments. It does not appear, however, that the trial court considered the depositions W.A. Smith filed because the uncontroverted Civ.R. 56 evidence establishes that MacDonald made unfounded accusations, represented as fact, that W.A. Smith ignored its fiduciary obligations to its clients and recommended "junk products" that were "less than investment grade," with the sole purpose of increasing commissions above the market rate. Similarly false is MacDonald's statement that he is aware of "clients losing thousands from this company." Additionally, MacDonald himself was unequivocally aware that his Google review was defamatory and based on false assertions, insofar as he unilaterally deleted his

Google reviews of W.A. Smith in December 2022 — and subsequently deleted his Google account entirely.

{¶ 87} Unfortunately, the bell cannot be unrung. MacDonald's defamatory per se reviews have caused irreparable harm to the reputation and business integrity of W.A. Smith, as well as its principal, employees, and personnel. Therefore, I would sustain W.A. Smith' first assignment of error in part.

{¶ 88} In W.A. Smith's second and third assignments of error, it challenges the court's ruling on evidentiary issues raised in its motions in limine and argues the trial court erred when it permitted the jury to decide a question of law. I would find that the disposition of the first assignment of error, however, renders the remaining assigned errors moot. App.R. 12.

{¶ 89} In light of the foregoing, I concur in part and dissent in part with the majority's opinion. I agree with the majority's decision to affirm the denial of summary judgment as it relates to the extent of the presumed damages because genuine issues of material fact exist as to the harm caused to W.A. Smith's trade or occupation. I disagree, however, with the majority's decision to affirm the denial of summary judgment on the issue of liability. I would grant W.A. Smith's motion for summary judgment as to defamation per se and would remand the matter for disposition consistent with this opinion.